UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAMES L. MILLER,

                       Petitioner,

        v.                                 **DECISION AND ORDER**
                                             10-CV-169A

ANTHONY SANGIACOMO, Chief U.S.
  Probation Officer, and

AIR FORCE CLEMENCY & PAROLE
  BOARD,

                       Respondents.

---

**I.    INTRODUCTION**

Pending before the Court are a petition by petitioner James L. Miller for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, and a motion to dismiss that petition by respondents Anthony SanGiacomo ("SanGiacomo") and the Air Force Clemency and Parole Board ("CPB"). Through his petition, petitioner challenges his 2004 conviction by court-martial in the United States Air Force ("Air Force"), on the grounds that it resulted from ineffective assistance of counsel. Petitioner also challenges the imposition of post-incarceration supervision as flowing from an unlawful conviction and as depriving him of due process rights. Respondents seek dismissal because they believe that

SanGiacomo lacks custody over petitioner within the meaning of habeas corpus jurisprudence and that this Court lacks jurisdiction over the case. For the reasons below, the Court will dismiss the petition as against SanGiacomo and will transfer the case to the United States District Court for the District of Maryland for further proceedings.

## II.     BACKGROUND

This case concerns petitioner's first collateral challenge in a civilian court, and his second collateral challenge overall, to his 2004 military conviction and sentence on sexual misconduct charges. Petitioner joined the Air Force on July 4, 2000 and eventually reached the rank of first lieutenant. On May 19, 2003, petitioner was charged with five counts of assault, sexual assault, and conduct unbecoming an officer and gentleman for alleged incidents involving three different victims in 2002 and 2003. The Air Force conducted a pretrial hearing in June and July 2003 pursuant to Article 32 of the Uniform Code of Military Justice ("UCMJ"). Two specifications within the charges were dismissed, but the charges otherwise stood. On August 25, 2003, the Air Force referred petitioner to a trial by general court-martial. The trial began on October 28, 2003 and continued for all or part of 19 days over the next five months. On February 22, 2004, the court-martial panel of officers convicted petitioner on all five counts and all but two specifications therein. For those two specifications, petitioner

was convicted of lesser included offenses.  The Air Force sentenced petitioner to dismissal, 12 years of confinement, and forfeiture of all pay and allowances.

Petitioner's lengthy history of post-trial proceedings began in 2004 with a direct appeal within the military justice system.  In his first appeal to the United States Air Force Court of Criminal Appeals ("AFCCA"), petitioner raised numerous issues including the need to have suppressed evidence and the issue of ineffective assistance of counsel.  In an opinion dated March 30, 2007, the AFCCA affirmed petitioner's conviction and sentence.  Petitioner sought review of that affirmance from the United States Court of Appeals for the Armed Forces, but was denied review in an order dated February 4, 2008.  Meanwhile, on March 9, 2006, petitioner acknowledged receiving notice that the Air Force was considering placing him on mandatory supervised release ("MSR").  The Air Force ultimately did place petitioner on MSR, effective February 23, 2010 and expiring April 23, 2015.  Because petitioner expressed a desire to move to Western New York, the United States Probation Office for this District was designated as the supervisory office for petitioner's MSR.  Even though the local Probation Office was designated as the local supervisor, however, petitioner's notice of possible placement into MSR stated that CPB "may, at its discretion or upon request of the supervising probation officer, modify any terms or conditions of supervision or may terminate supervision entirely."  (Dkt. No. 6-2 at 41.)

This case stemmed in large part from the mandatory conditions of supervised release that the Air Force imposed on petitioner.  The certificate of supervised release issued to petitioner included mandatory conditions of supervised release, but petitioner refused to sign any acknowledgment or agreement to those conditions.  In a letter dated April 13, 2008, petitioner asked the president of CPB for a chance to appeal his placement into MSR on the grounds that his conditions of supervised release were imposed on him without any due process.  In a letter dated April 28, 2009, the president of CPB answered that petitioner had no right to appeal entry into MSR.  On March 24 and November 16, 2009, petitioner filed two petitions for a writ of habeas corpus with the AFCCA.  That court denied those petitions in orders dated May 27, 2010.  While petitioner's petitions were pending in the military justice system, petitioner commenced this case by filing his Section 2241 petition on March 3, 2010.

The issues at stake in petitioner's pending petition in this case are the same issues that he has raised throughout his post-conviction proceedings.  Petitioner asserts that he was denied effective assistance of counsel during his trial preparation.  Petitioner asserts further that the conditions of MSR imposed on him are unreasonable and were imposed without any due process.  In opposition to the petition and in support of their motion to dismiss, respondents assert that SanGiacomo is only a local reporting officer and cannot be

4

considered a "custodian" as that term is understood in habeas corpus jurisprudence. Additionally, respondents assert that this Court lacks jurisdiction because CPB, petitioner's official custodian, is located outside of this District.

## III. DISCUSSION

### A. Section 2241 and *Pro Se* Standards Generally

"As an initial matter, the Court is mindful that [petitioner is] proceeding *pro se*, and that [his] submissions should thus be held to less stringent standards than formal pleadings drafted by lawyers. Moreover, when [petitioners] bring a case *pro se*, the Court must construe their pleadings liberally and should interpret them to raise the strongest arguments that they suggest. Still, *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Rotblut v. Ben Hur Moving & Storage, Inc.*, 585 F. Supp. 2d 557, 559 (S.D.N.Y. 2008) (internal quotation marks and citations omitted). The Court will assess the pending petition in this context.

The general standard for obtaining habeas corpus relief under Section 2241 is well established. "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). "Whatever its other functions, the great and central office of the writ of habeas corpus is to test the legality of a prisoner's current detention." *Walker v. Wainwright*, 390 U.S. 335,

5

336 (1968). Under Section 2241(c), "legality" means that petitioner must establish a restraint on his liberty "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

### B. Petitioner's Custodian

The Court's first task in this case is to identify petitioner's proper custodian. The general rule for identifying a petitioner's custodian comes from the traditional situation of literal physical custody. "Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement . . . . This rule, derived from the terms of the habeas statute, serves the important purpose of preventing forum shopping by habeas petitioners. Without it, a prisoner could name a high-level supervisory official as respondent and then sue that person wherever he is amenable to long-arm jurisdiction. The result would be rampant forum shopping, district courts with overlapping jurisdiction, and the very inconvenience, expense, and embarrassment Congress sought to avoid when it added the jurisdictional limitation 137 years ago." *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004). In a scenario involving parole or supervised release, in which there is no warden imposing physical restraint, a petitioner may substitute whatever parole board or other governing body is responsible for setting the conditions of supervised release and enforcing them if the petitioner violates those conditions. *See Jones*

6

*v. Cunningham*, 371 U.S. 236, 243 (1963) ("While petitioner's parole releases him from immediate physical imprisonment, it imposes conditions which significantly confine and restrain his freedom; this is enough to keep him in the 'custody' of the members of the Virginia Parole Board within the meaning of the habeas corpus statute."). In this case, CPB is the governing body currently managing petitioner's liberty. CPB placed petitioner into MSR. CPB presented petitioner with the mandatory conditions of supervised release that he refused to acknowledge. The United States Probation Office in this District, at most, can relay updated information about petitioner to CPB and can ask CPB to modify or to terminate supervision. (*See* Dkt. No. 6-3 at 76 ¶ 6.20.3 ("The terms and conditions of supervised release, *as determined by the Service Clemency and Parole Board and identified in the release plan*, will be communicated to the releasee using DD Form 2716-1.") (emphasis added); *id.* ¶ 6.20.5 ("The Service Clemency and Parole Boards may, at their discretion or upon the request of the supervising U.S. probation officer, modify or release any terms or conditions of supervision or may terminate supervision entirely.").) The local Probation Office thus does not exercise any of the control over petitioner's liberty that the Virginia Parole Board exercised in *Jones*, and correspondingly would have no authority to modify or to terminate petitioner's MSR even if the Court tried to order it to do so. Under these circumstances, CPB is petitioner's sole custodian. The Court

will grant respondents' motion to dismiss in part and will dismiss the petition as against respondent SanGiacomo.

### C. Geographical Jurisdiction

The Court next must decide whether petitioner brought his petition in the right district. "Read literally, the language of § 2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian. So long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction' requiring that the prisoner be brought before the court for a hearing on his claim, or requiring that he be released outright from custody, even if the prisoner himself is confined outside the court's territorial jurisdiction." *Braden v. 30th Jud. Circuit Court of Ky.*, 410 U.S. 484, 495 (1973). As noted above, CPB is petitioner's sole custodian. The record indicates that CPB is located at Andrews Air Force Base in Maryland. CPB thus lies outside of this District. CPB's only connection to this District consists of a passive decision to allow petitioner's choice to reside here. Since CPB did not choose this District, it has not purposefully availed itself of any judicial resources here that would subject it to service of process. Under these circumstances, the only district court that would have jurisdiction to grant habeas relief is the District Court for the District of Maryland, where CPB is located. The Court draws support for this conclusion from analogous case law in which transfers of cases occurred to the courts that had sentencing or bail authority. *Cf. Berrettini v. Fed. Bureau of*

8

*Prisons*, No. 09 Civ. 1505, 2009 WL 1974319, at *3 (S.D.N.Y. July 8, 2009) ("The bail conditions, under which Berrettini is at liberty, place the petitioner in custody; therefore, the officials who administer the bail system logically should be considered the petitioner's custodians. In this case, that means the chief administrative officer of the Pretrial Services Office for the Middle District of Pennsylvania.") (internal quotation marks, alterations, and citations omitted); *Combs v. Atty. Gen.*, 260 F. Supp. 2d 53, 57 (D.D.C. 2003) ("Because the plaintiff is at liberty solely at the discretion of the sentencing judge, and the judge at this time is the only authority that can control his pre-detention activity and when the plaintiff's incarceration will commence, this Court concludes that the United States District Court for the Southern District of Ohio has custody of the plaintiff for habeas jurisdiction.").

### D.     Transfer

"Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed or noticed, and the action . . . shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred." 28 U.S.C. § 1631. Here, petitioner did not act unreasonably in arguing that this Court had jurisdiction. An outright dismissal would punish him

for that argument by requiring him to start over with a new filing, a new filing fee or poor-person application, and a longer period of delay. In contrast, while the transferee court will have discretion to order supplemental briefing if necessary, all papers needed for an adjudication on the merits appear to have been filed already. The Clerk of the Court will transfer all the papers electronically without the need for any action by the parties. Accordingly, the interests of justice warrant transfer of this case to the District of Maryland, where CPB is located.

Although petitioner does not reside in or near Maryland, *Arlen v. Laird*, 451 F.2d 684 (2d Cir. 1971), does not require a different analysis or conclusion. *Arlen* concerned a naval reservist who had no direct commanding officer and who had no contact with the district where his custodian, the United States Army Reserve Components Personnel Center, was located. Here, the record indicates that petitioner has written directly to the president of CPB in the past and has received a response. Petitioner thus is familiar with and capable of communicating with the necessary authorities in Maryland on papers. Further, as mentioned above, no further submissions appear to be necessary in this case. If so then a transfer will not create the kind of burden that the Second Circuit discussed in *Arlen*.

## IV. CONCLUSION

For all of the foregoing reasons, the Court orders as follows:

1) The Court grants respondents' motion to dismiss (Dkt. No. 6) in part and dismisses petitioner's petition as against respondent Anthony SanGiacomo. As against respondent the Air Force Clemency and Parole Board, the Court holds the motion in abeyance for further proceedings in the transferee court.

2) The Court finds that it lacks jurisdiction over respondent the Air Force Clemency and Parole Board. Pursuant to 28 U.S.C. § 1631, the Clerk of the Court is directed to take the steps necessary to transfer this case to the United States District Court for the District of Maryland. Since petitioner has requested that transfer as alternative relief (*see* Dkt. No. 10 at 10), any waiting period for transfer is waived.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: September 20, 2010