**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

JAMES L. MILLER,             *

Petitioner                   *

v                               *           Civil Action Case No. JFM-10-2621

AIR FORCE CLEMENCY AND     *
PAROLE BOARD.
                                 *

Respondent
                               ***

**MEMORANDUM**

Pending is self-represented petitioner James L. Miller's  (Miller) petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, and a Motion to Dismiss the petition, or in the Alternative, for Summary Judgment (ECF No. 20) filed by respondent, the Air Force Clemency and Parole Board (AFC&PB).  The issues are fully briefed, and the court now rules pursuant to Local Rule 105.6 (D. Md. 2011), no hearing being necessary. For reasons to follow, respondent's Motion for Summary Judgment will be GRANTED.

## I.      BACKGROUND

In this petition, Miller is challenging his 2004 conviction by court-martial in the United States Air Force on the grounds of ineffective assistance of counsel.   Additionally, he is attacking his post-incarceration supervision imposed under the  Mandatory Supervised Release (MSR) parole program. [1]  Specifically, he presents the following grounds for relief:

> Ground One  Ineffective Assistance of Counsel for failure to fully investigate the facts of his case for failing to: 1) locate and interview witnesses who would directly refute victim NM's abduction story; 2) interview victim NM's doctor from her 2002

---

[1]  This case was transferred from the United States District Court for the Western District of New York.  After Miller was released from confinement and placed on Mandatory Supervised Release (MSR), he moved to New York State where the U.S. Probation Office for the Western District of New York was designated as the supervisory office for his MSR. Miller filed this petition in  the Western District of New York which transferred the case to the District of Maryland after determining that the Air Force Clemency and Parole Board (AFC&PB), located at Andrews Air Force Base in Maryland, was Miller's proper custodian. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (noting the habeas statute provides the proper respondent is the person with custody over a petitioner).  ECF No. 15.  Both parties agreed that transfer to in District of Maryland was appropriate.  ECF Nos. 7 and 10.

psychiatric hospitalization regarding her prior allegation of sexual assault an diagnosed mental disorder; and 3) investigate an abduction and sexual assault reported while petitioner was in custody, similar in fact to the one reported by victim JDA.

Ground Two The period of post-release supervision imposed by the Air Force Clemency and Parole Board (AFC&PB) outside of the sentence imposed is contrary to clearly established Supreme Court precedent, and violates due process.

Ground Three  Miller's placement in the MSR program unlawfully abridges his liberty interest in good conduct time abatement days.

Ground Four  The AFC& PB's procedures for imposing MSR fail to meet due process standard of the federal constitution. Miller argues the AFC&PN failed to provide him with minimal protections during the process of imposing MSR.

Ground Five  The AFC&PB abused its discretion by imposing additional unreasonable conditions on Miller's  post-release supervision.  Miller argues the conditions imposed are unrelated to the circumstances of his conviction, unconstitutionally vague, or result in a greater deprivation of his liberty than necessary to achieve their objectives.

As relief, Miller wants his conviction vacated and his immediate release from the MSR program.

Petition, p. 2 and ECF No. 22, p. 12.

## A.  PROCEDURAL HISTORY

### 1.  Convictions and Sentences

Miller joined the United States Air Force in 2000, eventually attaining the rank of first

lieutenant.   On February 22, 2004, a general court-martial convicted him of attempted rape, forcible

sodomy, assault, kidnapping, and conduct unbecoming an officer.  Resp. Ex. 2.  He was sentenced

to 12 years confinement, dismissal, and forfeiture of all pay and allowances.[2]  He was dismissed on

---

[2] A court-martial is a bifurcated process, consisting of findings and a post-conviction presentencing.  Miller pleaded "not guilty" to the charges and requested a trial before a panel of court-martial members (i.e., a jury). After the members heard evidence and found Miller guilty of criminal offenses, a separate presentencing hearing was held before the same members, who considered both aggravating and mitigating evidence and announced the sentence of the court. *See generally,* Rules for Courts-Martial (RCM) 1001.  Rule for Courts-Martial 1107 provides that after a court-martial has adjudged a sentence, the convening authority takes action on the sentence and may disapprove a legal sentence or change the nature of the punishment, as long as the severity of the punishment is not increased.  In Miller's case, the sentence was approved.

April 3, 2008. [3]

## 2. Appeal

Miller served his sentence of confinement primarily at the U.S. Disciplinary Barracks (USDB) in Fort Leavenworth, Kansas, a facility administered by the Department of Defense (DoD), during which time he initiated post-trial proceedings beginning with a direct appeal to the United States Air Force Court of Criminal Appeals (AFCCA). Miller was represented on appeal by a team of appellate counsel and raised numerous issues, including ineffective assistance of trial counsel for failing to seek to suppress his statements to the police, failing to locate and interview unnamed persons who could have cast doubt on victim testimony, and failing to investigate a news report about an abduction with facts similar to those reported by his victims. Resp. Ex. 4, p. 9-10.[4] On March 30, 2007, the AFCCA affirmed Miller's conviction on appeal, but reduced his sentence of confinement by six months because of a delay in post-trial processing. Resp. Ex. 4.

Miller then sought review before the Court of Appeals for the Armed Forces (CAAF) which denied review on February 4, 2008.[5] Resp. Ex. 5. On April 3, 2008, the convening authority ordered execution of the final sentence of the general court-martial, including Miller's dismissal from the Air Force.

## 3. Petitions for Relief Before the Military Courts

---

[3] Miller was punitively dismissed from the Air Force, but remains subject to the Uniform Code of Military Justice (UCMJ) because he is still serving his court-martial sentence on MSR until his maximum release date. *See* Article 2(a)(7), UCMJ, 10 U.S.C. § 802(a)(7).

[4] The issues were fully briefed on direct appeal. Miller, by his counsel, filed a 49-page initial brief on June 8, 2006. The government filed its 55-page answer brief on October 6, 2006. Petitioner then filed a 3-page reply brief on October 25, 2006. *See* Resp. Memorandum, n. 5.

[5] Appellate review in the military court system consists of three possible levels. The Air Force Court of Criminal Appeals (AFCCA) is a by-right first level of appeal following a court-martial conviction. *See* Art. 66(c), UCMJ, 10 U.S.C. § 866(c). An appellant may then seek discretionary review before the Court of Appeals for the Armed Forces (CAAF). Art. 67(b), UCMJ, 10 U.S.C. § 867(b). The third level of review is before the United States Supreme Court. Art. 67a, UCMJ, 10 U.S.C. § 867a.

Miller filed five writs before the military courts prior to his placement on MSR.  Resp. Ex.

5, 7, 8, 10, and 11.

 February 2, 2009,  Miller petitioned for a Writ of Error Coram Nobis at the AFCCA in
which he raised claims of ineffective assistance.  Resp. Ex. 7.  He later withdrew that
petition and substituted it with his first petition for writ of habeas corpus in which he again
alleged counsel rendered ineffective assistance by failing to adequately investigate his case
and failing to question potential witnesses.  The AFFCA denied the petition on May 27,
2010.  Resp. Ex. 9.

October 26, 2009,  Miller filed a habeas petition challenging his MSR parole for
1) increasing his approved sentence;  2) abridging his good conduct time credits;
3) violating his due process rights; and 4) and subjecting him to certain MSR conditions that
were arbitrary, vague, and overly restrictive.  Resp. Ex. 10, p. 1.[6] The AFFCA denied the
petition on May 27, 2010.  Resp. Ex. 10.

 February 1, 2010.  Before the AFCCA decided his two habeas petitions, Miller  filed for a
Writ of Mandamus at the CAAF. The CAAF denied mandamus relief on April 26, 2010.
Resp. Ex. 8.

June 23, 2010, Miller appealed the AFCCA's dismissal of his first habeas petition (raising
ineffective assistance of counsel claims) to the CAAF.  The CAAF denied the appeal on July
19, 2010.  Resp. Ex. 11.

### 4.  Placement on Mandatory Supervised Release

#### A.  Notification

Miller was notified about the MSR program prior to his release.  On December 20, 2004,

within a month after arriving at the USDB, he signed a Risk Assessment Management Plan related

to MSR.  Resp. Ex. 12.   On March 9, 2006, he signed an acknowledgment form that explained the

MSR program in greater detail.  Resp. Ex. 13.

Miller was not granted traditional parole[7] at his annual reviews, but he was eventually

---

[6] While his two habeas petitions were pending before military courts, Miller commenced filed his § 2241 petition on
March 3, 2010.

[7] "In the military, release from confinement prior to the completion of the full sentence is possible under parole, MSR,
and good conduct time.  A voluntary parole program existed before MSR and has continued since.  Under this program,
a military inmate volunteers to be released subject to conditions governing his behavior while on release." *Huschak v.
Gray*, 642 F. Supp. 2d 1268 (D. Kan. 2009).

considered for MSR placement. On December 30, 2008, he was notified by USDB staff that he was under consideration for MSR placement at his annual parole consideration in early 2009. Resp. Ex. 14. Miller acknowledged the notification in writing, "I understand that I will be considered for MSR." *Id*. On December 30, 2008, instead of taking advantage of his opportunity to be heard prior to AFC&PB placement, Miller waived his right to appear before his Disposition Board at the USDB.[8] In addition, he acknowledged his understanding that documents submitted to the Disposition Board had to be turned in by January 29, 2009. Resp. Ex. 15.

After his annual parole consideration, Miller was notified by letter dated March 20, 2009, that the AFC&PB had directed his placement on MSR upon reaching his minimum release date, and he would remain on MSR until reaching his maximum release date. Resp. Ex.16. He was informed that while on MSR he would be required to comply with the conditions delineated in the Certificate of Supervised Release sent with the letter. *See id*.

Miller was released from confinement and into the MSR program on February 23, 2010, his minimum release date. Resp. Ex. 19 and 22. His final conditions of release were provided to him on that date, but he refused to sign them. He indicated on the form that he did not accept MSR. Resp. Ex. 23. Pursuant to DoD regulation, however, "departure of the releasee from the confinement facility constitutes acceptance of the terms and conditions of supervised release." Exhibit 25, DoDI 1325.7, at ¶ 6.20.4; *see also Huschak v. Gray*, 642 F. Supp. 2d. 1268, 1274 (D. Kan.); *Moultrie v. Secretary of the Army,* 723 F. Supp. 1230 (C.D. Cal. 2010). After Miller's

_____

[8] A Disposition Board considers eligible inmates for clemency, parole, MSR, return to duty and reenlistment. It provides recommendations to the AFC&PB for MSR and parole, if requested by the inmate. Exhibit 29, USDB Reg. 600-1, at & 10.1 (July 1, 2008). The Disposition Board case file is forwarded to the AFC&PB, which includes the Disposition Board recommendation, letters of character, and other documents.

release on MSR, the AFC&PB by letter dated August 27, 2010, removed the condition that Miller

participate in sexual offender treatment. Resp. Ex. 24.

### 5. Post-Confinement Release

On April 13, 2009, Miller wrote to the AFC&PB to "appeal" his placement on MSR and

"challenge" the conditions of his release. Resp. Ex. 17.  He argued that the process by which he was

placed on MSR fell "short of wholly sufficient due process" because: 1) he was unaware of the

conditions until March 27, 2009; 2) he was neither provided a basis for the added conditions[9] nor an

opportunity to rebut the information on which the conditions were based; 3) many of the general

conditions were  unconstitutional, unlawfully vague, and overly restrictive;[10]  and 4) his release due

to earned abatement should be without conditions. *See id.*

On April 28, 2009, the AFC&PB answered Miller in a letter which reads in part:

> This responds to your April 13, 2009, letter requesting an "appeal" from the
> Air Force Clemency and Parole Board's (AFC& PB) decision to place you on
> Mandatory Supervised Release (MSR) and protesting many of the AFC&PB's
> conditions of your MSR.  We disagree with many of your statements and assertions.
> Engaging in arguments with you about them is not productive.  Nonetheless, we
> provide a few comments with the hope they will assist your reentry into society.

> As you have been informed by the U.S Disciplinary Barracks Staff, you do
> not have a right to "appeal" the AFC&PB's decision to place you on MSR.  While
> you may maintain your innocence, the AFC&PB must deal with you as someone
> who has committed very serious, violent offenses.  Therefore neither your criminal
> record nor your letter persuades the AFC&PB to deviate from the DOD policy to
> place you on MSR to protect the "gaining community" and to assist you in transition
> to responsible citizenship.

---

[9]  Miller objected to the conditions requiring: 1) successful participation in a community-based Sex Offender Treatment
Program at his own expense and include polygraph and other screenings; 2) prohibitions against residing in a household
with or having unsupervised communication with minors; 3) disclosing his computer access to his probation officer;  4)
permitting his probation officer to conduct periodic unannounced examination of his electronic equipment;  and
5) abstaining from pornography, alcohol, and illegal substances. Resp. Ex. 17.

[10]  Miller objected to general conditions concerning: 1) changes in employment and residence;
2) associating with persons questionable reputation; 3) entering places where controlled substances are sold or used; 4)
conducting himself in an honorable manner; 4) avoiding unnecessary debt;  and 5) restrictions on possessing
pornography. Resp. Ex. 17.

Turning to your conditions of community supervision, the AFC&PB designed each to protect the "gaining community" and to assist you in your transition to responsible citizenship. Each is designed in some fashion to prevent you from repeating your criminal behavior or to protect society from your predilections. For example, you have stated you looked for vulnerable women to victimize. Hence, our concerns for youth of any "gaining community." Similarly, the AFC&PB does not find persuasive your objections to participate in community-based treatment in light of your admissions to your criminal behavior and, when you desired parole, your offer to participate in community-based treatment.

Nonetheless, the AFC&PB desires inmates succeed in their reentry. While it has never found a U.S. Probation Officer's determination of what is a reasonable payment for community-based sex offender treatment, we do desire inmates to know that they may ask for a review if such were to occur. To that end, we clarified your condition of supervision No. 1, as set out in a modified *Certificate of Supervised Release.*

Resp. Ex. 18. The AFC&PB later added a provision to the condition that permitted Miller to request that the cost of his treatment "be reduced or eliminated." Resp. Ex. 23, p. 3.

Miller continued to seek modification to his MSR conditions. On November 19, 2009, he asked whether his assigned U.S. Parole Officer "can make modifications and/or additions to the conditions of supervised release." Resp. Ex. 20. One day later, Miller was informed that the AFC&PB has final approval for all requests to modify conditions of supervision. *See id.*

Miller's inquiries about his placement on MSR led Colonel Shawn Shumake, Judge Advocate General to prepare a declaration, dated December 6, 2009, clarifying that process for both prisoners and USDB personnel. Exhibit 21.

**B.  MANDATORY SUPERVISED RELEASE (MSR) PAROLE PROGRAM**

1.  Authority

The DoD administers a variety of early release procedures for military personnel sentence to confinement. Resp. Ex. 25, Department of Defense Instruction (DODI) 1325.7, *of Military Correctional Facilities and Clemency and Parole Authority*,  ¶¶ E26.1-E26.5 (July 17, 2001). In general, the supervision of persons on parole is designed to enhance the person's reintegration into

civilian society. Parole decisions are discretionary and vested in the clemency and parole boards of the military departments, and prisoners are informed that there is no right to clemency or parole. Prior to release on parole, an inmate must have an approved parole supervision plan, and agree in writing to abide by the plan and conditions of supervision. Violating the terms and conditions may result in revocation of parole. *See id.*

The MSR program was started in 2001, several years before Miller committed the offenses for which he was convicted and sentenced, pursuant to 10 U.S.C. § 952(a), which delegates broad discretionary authority to the Secretaries of the Military Departments to create "a system of parole for offenders who are confined in military correctional facilities and who were at the time of commission of their offenses subject to the authority of that Secretary." 10 U.S.C. § 952 (a). The Air Force MSR program is administered by the AFC&PB. Resp Ex. 30, *Air Force Instruction* (AFI) 31-205.

Before MSR, inmates whose crimes and background made them unsuitable for traditional parole would be unconditionally released without supervision at their minimum release date. If an inmate was not accepted for parole and remained confined until the minimum release date, release would be unconditional and without supervision. The result was that inmates with criminal backgrounds unsuitable for early release on parole were released into society on their minimum release date without the supervision or guidance provided to inmates deemed more deserving of parole. Resp. Ex. 21, Decl of Colonel Shawn Shumake, ¶ 3.

To address this situation and foster goals of rehabilitation, the military developed the MSR program. DoD regulations set forth the purpose of the program as follows:

> The supervised release of prisoners who are not granted parole prior to the MRD [minimum release date] is a highly effective technique to provide an orderly transition to civilian life for released prisoners and to better protect the communities into which such prisoners are released. Accordingly, it shall be the policy of the

Department of Defense to use supervised release in all cases except where it is determined by the Service Clemency and Parole Boards to be inappropriate.

Resp. Ex. 25, DoDI 1325.7, at ¶6.20.1.

The MSR program covers specified classes of prisoners who, like Miller, have served sufficient time in confinement to be considered for parole, but who are not granted traditional parole. *See id.*

2. MSR is a System of Parole

The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence. Under some systems, parole is granted automatically after the service of a certain portion of a prison term. Under others, parole is granted by the discretionary action of a board, which evaluates an array of information about a prisoner and makes a prediction whether he is ready to reintegrate into society.

*********

Its purpose is to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed.

*Morrissey v. Brewer*, 408 U.S. 471, 477-78 (1972).

In light of this guidance, the courts that have considered this question have concluded that MSR is a parole system. *Huschak*, 642 F. Supp. 2d at 1276; *Moultrie v. Secretary of the Army*, 723 F. Supp. 2d 1230, 1236-7 (C.D. Cal. 2010). MSR is a parole system that requires a prisoner to serve the balance of his sentence outside of confinement on the condition that he abide by certain rules. "It does not matter whether the conditions are voluntary or involuntary." *Id.* The conditions of MSR are not punishment. *See United States v. Pena*, 61 M.J. 776 (A.F. Ct. Crim. App. 2005),[11]

---

[11] In *Pena*, a military prisoner alleged that the military judge's failure to announce MSR conditions when pronouncing sentence was both statutory and constitutional error. *Pena*, 61 M.J. at 784, n. 10. The military courts rejected that argument, stating:

[W]e do not construe the conditions of MSR as punishment at all. The infliction of punishment is a deliberate act intended to chastise or deter. This is what the word means today; it is what it meant in the eighteenth century." *See Wilson v. Seiter*, 501 U.S. 294, 300 (1991). Nothing in the record indicates a punitive intent by the DoD, the Air Force, or the AFC&PB in enacting and implementing MSR.

aff'd, 64 M.J. 259 (C.A.A.F.); *cert. denied* 550 U.S. 937m (2007).

Like traditional parole, MSR applies from the time of release from confinement until the expiration of their sentence to confinement; and it may be revoked for violation of the terms and conditions of the program. In addition to the conditions that may be imposed during parole, the Clemency & Parole Board may use the MSR program to impose "*any additional reasonable supervision conditions*. . . that would . . . further an orderly and successful transition to civilian life for released prisoners, and *which would better protect the communities into which prisoners are released.*" Resp. Ex. 25 , DoDI, at ¶ 6.20.2. (Emphasis added).

3. Administration

Prisoners eligible for MSR, like prisoners eligible for traditional parole, must have their release plan approved prior to their release at their minimum release date. *Id*., at ¶ 6.20.2. An inmate's departure from the confinement facility constitutes acceptance of the terms and conditions of the supervised release plan under the MSR. *Id*., at ¶ 6.20.6. A prisoner who refuses to accept the conditions of supervision may forfeit all earned good conduct time and abatements. *See* Resp. Ex. 26, Memorandum of Understanding Among Department of Defense Clemency and Parole Boards and Corrections Headquarters Agencies, dated January 8, 2006 ("MoU") at ¶ 3(e)(5). Violation of the terms and conditions of MSR is considered equivalent to a violation of the terms and conditions of parole and processed in accordance with the same procedures. Exhibit 2, DODI, p. 28.¶ 6.20.6. Thus, "[i]n execution, MSR is virtually identical to parole." *Pena*, 61 M.J. at 780.[12]

---

Finally, unlike the federal civilian system, supervised release in the DOD is not itself punishment because it is not part of the sentence. *See generally United States v. Gilchrist,* 130 F.3d 1131, 1134 (3d Cir. 1997).

*Pena*, 61 M.J. at 78.

[12] It is DoD policy to use MSR in all cases when a prisoner has an approved sentence of three years or more and the prisoner is not granted parole. DoDI 1325.7 at ¶ 6.20.1. Prisoners should generally presume that they will be placed on

MSR is mandated as "the policy of the Department of Defense to use supervised release in all cases except where it is determined by the Service Clemency and Parole Boards to be inappropriate." Resp. Ex. 25, DODI 1325.7 at ¶ 6.20.1. Under MSR, an inmate is released with supervision at his minimum release date, which is computed by applying all good conduct and earned time reductions from his sentence. *See id*. at Enclosure 26.[13]

DoD MSR regulations do not specifically preclude prisoners placed on MSR from appealing the MSR decision. Resp. Ex. 21, ¶ 4. Decl. of Colonel Shawn Shumake, Judge Advocate General, Director of Legal Policy, Office of the Under Secretary of Defense, Personnel and Readiness. In practice, however, prisoners placed on MSR are not provided an appeal of the same type and form as prisoners who are denied parole. *See id*. (citing to DoDD 1325.7 at 6.17.9.5) If a prisoner is denied parole, appeal is available through the Commander of the facility of confinement, then to the Clemency and Parole Board, and then to the designated Secretarial appellate authority. *See id.* In MSR cases, the Service Clemency and Parole Boards review prisoner release plans and consider requests for reconsideration. *See id*. (citing DoDI 1325.7 at ¶ 6.20).

> The Service Secretaries, by virtue of the DoD Directive that established the MSR program, have made MSR the default release status for those not released on parole. Therefore, in MSR challenges by a prisoner, unlike parole denials, prisoners placed on MSR have already been denied parole, which was a separate determination that could have been appealed to the Secretary or their designee. As such, a prisoner cannot appeal the MSR placement decision to the Secretary. Rather, prisoners who are dissatisfied with the MSR decision may request reconsideration of the MSR decision or the MSR conditions from the Clemency and Parole Boards. The very nature and purpose of Military Review Boards, like the Clemency and Parole Boards, allows for such requests for reconsideration, hence a specific MSR reconsideration provision was not included in the regulations that promulgated the MSR policy.

---

MSR because it is the default, but not automatic, disposition for prisoners who are not released earlier on parole. Resp. Ex. 21, ¶ 3, Decl. of Colonel Shumake.

[13] Thus, an inmate receives the benefit of these credits because they are included in determining his minimum release date for MSR.

> To the extent a prisoner has been told there is no appeal, the confinement facilities have been advised or will be given this affidavit to clarify that the prisoner's request for reconsideration of MSR is permissible. However, the confinement facility is not required to hold a separate disposition review board as occurs in a parole appeal situation.

Resp. Ex. 21, ¶¶ 3 and 4, Decl of Colonel Shumate.


4.   MSR distinguished from Federal Supervised Release

The military's MSR program is different from federal supervised release. *See Huschak v. Gray*, 642 F. Supp. 2d at 1268; *Moultrie,* 723 F. Supp. at 1230. Supervised release is a form of post-imprisonment supervision imposed by federal civilian courts which includes the authority to impose, in addition to a period of confinement, "a term of supervised release after imprisonment." 18 U.S.C. § 3583(a).  A term of supervised release does not replace a portion of the sentence of imprisonment, but rather is an order of supervision in addition to any term of imprisonment imposed by the court.  *See id; see also Huschak,* 642 F. Supp. at 1280 . In contrast, MSR is a parole system based on the statutory delegation to the Secretaries of the military. *See id*.  MSR involves conditions that imposed by executive branch officials after completion of trial; it is not part of the adjudged sentence to confinement.  *See id*.  The conditions are imposed within the previously adjudged sentence, not in addition to the adjudged sentence.  *See id*.

 Further, MSR is limited in duration to the total period of the sentence of confinement, whereas, federal supervised release begins when the original sentence of confinement is satisfied. "Unlike the federal civilian system, MSR in [the military] is not part of the approved sentence, and the period of supervision does not extend past a prisoner's maximum release date." *See Pena*, 61 M.J. at 779.

**II.      STANDARD OF REVIEW**

## A. SUMMARY JUDGMENT

Rule 56(a) & (c) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

This does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

The party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party has met that burden, the non-moving party must come forward and demonstrate that such an issue does, in fact, exist. *See Matsushita Elec. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).* "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)); *see also Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

The court generally must view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Scott v. Harris,* 550 U.S. 372, 376-77 (2007). However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Id.* at 380.

## B. HABEAS REVIEW OF MILITARY JUSTICE DETERMINATIONS

Habeas corpus relief may be granted under § 2241 to a federal prisoner who demonstrates he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). Federal district courts have limited authority to review court-martial proceedings for such error. Review is generally limited to determining whether the claims raised by the petitioner were given full and fair consideration by the military courts. *See Lips v. Commandant, United States Disciplinary Barracks*, 997 F.2d 808, 811 (10th Cir.1993), *cert. denied*, 510 U.S. 1091 (1994). If the issues have been given full and fair consideration in the military courts, a district court should not reach the merits and should deny the petition. *Id*. Where a military court decision has dealt fully and fairly with an allegation raised in a federal habeas petition, it is not open to the federal court to grant the writ by reassessing the evidentiary determinations. *See Burns v. Wilson*, 346 U.S. 137, 144 (1953). As explained by the Supreme Court:

> [I]t is not the duty of the civil courts simply ... to re-examine and reweigh each item of evidence of the occurrence of events which tend to prove or disprove one of the allegations in the applications for habeas corpus. It is the limited function of the civil courts to determine whether the military have given fair consideration to each of these claims.

*Id*.

Federal Circuit courts that have interpreted what constitutes "full and fair consideration" have not defined a uniform standard. *See Armann v. McKean,* 549 F. 3d 279, 289 n. 10 (3rd Cir. 2008) (collecting cases), and this court is unaware of binding Fourth Circuit precedent applying the

"full and fair consideration" test.  Jurisprudence on this subject has been developed primarily in the

Tenth Circuit where the USDB at Fort Leavenworth Kansas is located.  While these decisions are

not binding precedent in this Circuit, in the absence of controlling Fourth Circuit case law, this

court finds the Tenth Circuit precedent instructive.[14]

Four factors should be considered upon habeas review of a military conviction. They are

whether: 1) the asserted error was of substantial constitutional dimension: 2) the issue is one of law

rather than of disputed fact already determined by the military tribunal; 3) there are no military

considerations that warrant different treatment of constitutional claims; and 4) the military courts

failed to give adequate consideration to the issues involved or failed to apply proper legal standards.

Emphasis is assigned to the fourth factor as the one most critical. *See Lips v. Commandant, U.S.*

*Disciplinary Barracks*, 997 F.2d 808, 811 (10th Cir. 1993) ("Under *Burns*, if the military gave full

and fair consideration to claims asserted in a federal habeas corpus petition, the petition should be

denied.  Only when the military has not given a petitioner's claims full and fair consideration does

723 F.Supp.2d 1230 the scope of review by the federal civil court expand."); *see also Thomas v.*

*U.S. Disciplinary Barracks*, 625 F.3d 667, 670-71 (10th Cir.2010) (observing that "recent Tenth

Circuit cases have emphasized the fourth consideration as the most important").

Where an issue is briefed and argued before the military court and is disposed of, even

summarily, the federal habeas court will find that the issue has been given full and fair

consideration. *See Watson v. McCotter,* 782 F.2d 143, 145 (10th Cir.), *cert. denied*, 476 U.S. 1184

(1986).  If a petitioner failed to present a claim to the military courts, it is waived. *See Roberts v.*

*Callahan*, 321 F.3d 994, 995 (10th Cir. 2003) (cited in *United States v. Willenbring*, 2006 WL

---

[14]     Other district courts located outside of the Tenth Circuit have found these cases  instructive and persuasive. *See, e.g., Sharp v. U.S. Army* 2008 WL163595 (N.D.N.Y 2008) (applying *Lips* standard); *Romey v. Vanyur*, 9 F.Supp.2d 565, 569 (E.D.N.C.1998) (same); *Jordan v. Warden, USP Lewisburg,* No. CV-97-0465, 1998 WL 614694, at *2 (M.D. Pa.1998) (same).

1114044 (4th Cir. 2006) (unpublished)).  The exception to the waiver rule is that a petitioner may obtain relief by showing cause and actual prejudice. *See Lips*, 997 F.2d at 812.

Judicial review of an AFC&PB decision is also limited. The AFC& PB serves functions similar to those of the U.S. Parole Commission (USPC).  The AFC& PB, like the USPC, does not stand in an adversarial posture in regard to the prisoner, nor is it opposed to release as a matter of principle.  *See Dye v. U.S. Parole Commission*, 558 U.S Parole Commission, 558 F. 2d 1376, 1378 (10th Cir. 1977).  "[I]t is not the function of the courts to review the discretion of the Board in the denial of application for parole or to review the credibility of reports and information received by the Board in making its determination." *United States Board of Parole, v. Merhige*, 487 F.2d 25, 29 (4th Cir. 1973) (quoting *United States v. Frederick* 405 F.2d 129 (3rd Cir. 1968)). *See also Beltempo v.Hadden*, 815 F.2d 873, 875 (2nd Cir. 1987); *Stroud v. United States Parole Commission*, 668 F.2d 843, 846 (5th Cir. 1982); *Adams v. Keller*, 713 F.2d 1195, at 1198-99 (6th Cir. 1983).  The inquiry is not whether the decision is supported by the preponderance of the evidence, but whether there is a rational basis in the record for the Board's conclusion. *See Misasi v. United States Parole Commission*, 835 F.2d 754, 758 (10th Cir. 1987).

## III.     DISCUSSION

Miller's claims in Grounds One, Two and Three have been fully and fairly considered by the military courts.  When a military decision has dealt fully and fairly with an allegation raised in a habeas case, "it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence." *Burns*, 346 U.S. at 142.

Underlying Miller's claims is his erroneous assumption that placement on MSR is a form of punishment, not parole.  As earlier noted, MSR is not punishment but a form of parole, albeit mandatory, established as the default early release mechanism for inmates not granted traditional

parole. *See Morrissey* 408 U.S. at 477 (1972) ("The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence. ").

## A. GROUND ONE- INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

In his direct appeal to the AFCCA, Miller faulted his trial counsel[15] for failing to: 1) move to suppress Miller's statements to Los Angeles Police detectives; 2) conduct an adequate investigation in his case, by failing to interview one of his victim's doctors, as well as potential witnesses in the area where he was alleged to have kidnapped one of the victims; 3) failing to follow up on a media report describing a similar abduction; and 4) allegedly shifting the burden of proof during argument. Resp. Ex. 4, p. 9. He posits the AFCCA on direct appeal came to "an unreasonable determination of the facts, in light of the evidence presented in the record of trial and thus, failed to fully and fairly consider his claim" Pet. Reply p. 3. He challenges as unreasonable and contradicted by the record the AFCCA conclusion that "the defense made a reasonable tactical decision… to attack the issues of consent." *See id*. p. 2.

Miller's ineffective assistance claims were considered and rejected on direct appeal to the AFCCA. Resp. Ex. 4, p. 9-10. In its opinion, the military court made the following remarks about the four military appellate defense counsel and one civilian defense counsel who represented Miller at trial:

> [Appellate] counsel mounted an exceptionally energetic defense at trial, filing motion after motion, orally and in writing, seeking to discover exculpatory evidence and limit both their client's criminal liability and the arsenal of information available to the government. Over 100 appellate exhibits are appended to the record of trial,

---

[15] Miller raised his ineffective assistance of counsel claim, citing to *United States v. Grostefon*, 12 M.J. 341 (C.M.A. 1982). Under *Grostefon*, when an appellate defense counsel believes that an issue which a defendant urges appellate counsel to raise would be countereffective, and the defendant refuses to withdraw the issue, appellate counsel lists the issue for the appellate court's consideration without further briefing. *Grostefon*, 12 M.J. at 436. Petitioner's ineffective assistance of counsel claims were listed by his military appellate counsel under *Grostefon*. Exhibit 4 at 9; *see also* Pet. Opp Ex. 2.

comprising a veritable testament to the extensive efforts of the trial defense team.

Resp. Ex. 4, p. 10.  The AFCCA concluded that Miller's rights were not violated; thus, counsel

were not ineffective in failing to move for suppression.  *See id*. at 7-9.   The AFCCA then addressed

the specifics of Miller's ineffective claims in pertinent part:

> [Miller] also argues his trial defense team did not adequately investigate his case, claiming in particular that they failed to question unnamed persons who he says could possibly have identified passersby who might have been able to cast doubt on a collateral element of [the victim's] story; i.e. that he drove away quickly from the scene where she was abducted.  The appellant also complains his trial defense counsel should have proved a news report appearing subsequent to his arrest about another abduction in the Los Angeles area similar to the ones reported by [two victims].  Finally, he contends his civilian defense counsel's argument in findings essentially invited the members to find the appellant guilty if they agreed with his counsel's recounting of the evidence at trial.

> Service members have a fundamental right to the effective assistance of counsel at trial by courts-martial. *United States v Knight*, 53 M.J. 340, 342 (CAAF 2000)(citing *United States v. Palenius*, 2 M.J. 86 (C.M.A. 1977).  We analyze the effectiveness of counsel under the framework established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).   Though counsel are presumed competent, a showing of judgment or conduct unreasonable under prevailing  professional norms may rebut that presumption.  *Id*. at 687.   The appellant bears the burden of persuasion.  *United States v. Garcia*, 59 M.J. 447, 450 (CAAF 2004); *United States v. McConnell*, 55 M.J. 479, 482 (CAAF 2001).  If the appellant succeeds we test for prejudice. *Strickland,* 466 U.S at 687; *see also United States v. Polk*, 32 M.J. 150, 153 (CMA 1991).

> We find that appellant has failed to carry his burden.  Even if true, the conduct he describes would not establish ineffectiveness of counsel under the facts of this case. *United States v. Grigorzuk*, 52 M.J. 312, 315(CAAF 2000).  The avenues available to [Miller's] defense trial defense team were sharply constrained by [Miller's] own shifting and internally-contradictory versions of the events of April 2003.  Had the appellant chosen to exercise his right to silence when interviewed by the police, the defense might profitably have pursued the notion that the assailant in the news report was actually the person who took [two victims] off the street; but [Miller's] admissions rendered such an approach untenable.  Thus, rather than focusing on unidentified witnesses who might challenge the minutiae of [one victim's] story, the defense strategy was to mount a full-throated attack on the claims of force and nonconsent by introducing the medical and police histories of both women.

*Id.* at 9-10.   The AFCCA observed that in addition to Miller's own admissions, other incriminating evidence against him included one victim's description of the contents of Miller's home, a second victim's identification of Miller from a photo array, and DNA evidence taken from the second victim's shirt.   *See id.*, n. 10.   As to Miller's claim that counsel was deficient for failing to interview one victim's psychiatrist, it was noted that the defense provided medical records of the victims in an effort to undermine their credibility on the issue of consent.   *See id.*   Although the court did not specifically address Miller's allegation about interviewing the psychiatrist, the court "considered [his] remaining assignments of error and [found] them to be without merit." *Id.* at 12. In regard Miller's assertions of burden shifting, the court rejected finding ineffective assistance based on the "single turn of phrase" about which Miller complained. *Id.*

Miller's direct appeal to the CAAF presented the same claims of ineffective assistance of counsel.   Miller's petition for review of that decision to the AFCCA was denied in its entirety. Resp. Ex. 5.   Petitioner raised these same issues again in his later-withdrawn petition for a writ of error coram nobis  and in his first habeas corpus petition to the AFCCA, as well as in a writ-appeal to the CAAF. Exhibits 9, 11. The AFCCA's order on the first habeas petition noted that "the petitioner essentially reiterates his ineffective assistance of counsel claims previously addressed by this  Court."   Resp. Ex. 9, p. 2.   The AFCCA rejected the arguments, finding that "the petitioner presents no new evidence or basis justifying his position." *Id.*   The CAAF agreed that there was no merit to Miller's arguments.   Resp. Ex. 11.

The court concludes that the military courts gave full and fair consideration to the factual record and the legal issues presented.   Miller raised several issues of substantial constitutional dimension which were decided by the military courts after consideration of the evidence and legal analysis. The military courts gave adequate consideration to Miller's arguments and applied the

proper legal standards.  After reviewing Miller's claims in light of the record and the four factors to consider before deciding whether to reach the merits of these claims, the court finds that the military courts gave full and fair consideration to petitioner's claims.  Consequently, the claims will be denied and dismissed.

## B.  GROUND TWO-MSR EFFECT ON SENTENCE

Miller asserts that the period of post-release supervision imposed by the Air Force Clemency and Parole Board (AFC&PB) outside of the sentence imposed is contrary to clearly established Supreme Court precedent, and violates due process.  Petition, p.  2.  He argues that only a valid criminal sentence authorizes custody of a defendant, all custodial terms must be explicitly imposed, and he was placed on a period of post-release supervision by the AFC&PB several years after completion of his trial and appeals.  Petition, p. 2.

In his second petition for habeas corpus before the AFCCA, Miller argued that "the imposition of the MSR resulted in custody outside his approved sentence in violation of federal law." Exhibit 10, p. 1.   The AFCCA recognized its authority to review the claim and rejected the argument, explaining that it could review whether "the post-trial conditions … unlawfully increased the petitioner's punishment…." *Id*. at 2.   Most importantly, the AFCCA determined that Miller had presented no evidence to show his sentence has been increased.  *Id*.  Miller provides no evidence in his § 2241 petition to contradict that finding.

Not only has this claim been fully and fairly considered by the military courts, but it fails, as a factual matter, to acknowledge the difference between MSR and federal supervised release.[16]

---

[16]  Miller's reliance on *Hill v. United States ex rel. Wampler*, 298 U.S. 460 (1936), and *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006) to support his claim of an improper increase in sentence is misplaced.  *Wampler* held a period of post-conviction release supervision is unconstitutional unless imposed at trial. *Wampler*, 298 U.S. at  464 .  In *Early*, the New York State Department of Corrections was held to have unlawfully imposed a term of post-release supervision after the prisoner was sentenced at trial.  Early, 451 F. 3d   These cases are inapposite to Miller's;  his placement on MSR with conditions did not add to his sentence.  *See supra* p. 21.

MSR does not extend the sentence of a defendant beyond the full term of confinement as announced by the court at sentencing. *See Huschak*, 642 F. Supp. 2d at 1280 (quoting 18 U.S.C. § 3583(a)); *see also United States v. Seawell*, 2008 WL 65113, at *2 (A.F. Ct. Crim. App. 2007), aff'd, 67 M.J. 18 (C.A.A.F. 2008). Miller's sentence as it was imposed at trial was not increased when he was placed on MSR.[17] His conditional release from confinement before the expiration of his sentence, albeit with conditions, is not punishment.

## C. GROUND THREE- GOOD CONDUCT AND ABATEMENT CREDITS

Miller next claims his placement in the MSR program unlawfully abridges his liberty interest in good conduct time abatement. Petition, p. 2. He posits that when he was court-martialed, "the military's abatement day program caused 'a [d]eduction from the term of sentence(s),' by eliminating or nullifying the un-served portion of an inmate's sentence on a day-for-day basis." Pet. Opp. p 12. Miller argues that if he had remained incarcerated, he would have been granted "absolute liberty by receiving the full benefit of a reduction in length of sentence through the vesting of the DoD created liberty interest in accumulated abatement days." Pet. Opp. p. 11. Further, he claims that his court-martial occurred before the "new policy" on abatement days was issued on September 17, 2004. Pet. Opp. Ex. 7. The "new policy" defined good conduct time as a "deduction from a prisoner's release date. Thus under the new policy, good conduct days no longer reduce an inmate's sentence rather they simply reduce the portion of the sentence that must be served in confinement." *Id.*

1. Presentation of Claim to AFCCA

Miller challenged his placement on MSR as an unlawful abridgment of "his liberty interest in good conduct time credits" in his second habeas petition to the AFCCA. Exhibit 10 at 1. The

---

[17] Indeed, MSR serves to reduce time in confinement for those members who accept the terms and conditions of the program by departing the confinement facility. Exhibit 25, DoDI 1325.7, at ¶ 6.20.4.

AFCCA recognized its authority to review such claims insofar as the post-trial conditions of MSR "violated an express prohibition in the UCMJ, unlawfully increased the petitioner's punishment, or rendered his guilty plea improvident." *Id*. at 2. In rejecting Miller's claims, the AFCCA determined he had "no reasonable right to expect that he will serve less than the approved sentence." *Id*.

2. Calculation of Release

A military prisoner sentenced to a term of confinement is given a Maximum Release Date, which is the actual length of his sentence to confinement "without reductions" (i.e., if a prisoner is sentenced to 10 years in confinement, that date will generally be at the 10-year point). Resp. Ex. 28, DoDI1325.7-M, at ¶ AP1.1.13. The Maximum Release Date sometimes requires initial adjusting due to judicial or administrative credits (i.e., for pretrial punishment); this is termed the Adjusted Maximum Release Date. *Id*. at ¶ AP1.1.1.

The Adjusted Maximum Release Date is the starting point for abatements. Good conduct time is given to prisoners serving a sentence imposed by court-martial, based on a formula linked to the length of confinement. Resp. Ex. 25; DoDI 1325.7, ¶ E26.1. Prisoners also earn other abatements, known as "earned time." *Id*. at ¶ E26.2. Once earned, such credits can be "forfeited" after administrative due process. *Id*. at ¶ 6.9.3.5.

A prisoner's Minimum Release Date (MinRD) is computed by changing the Adjusted Maximum Release Date **to account for any sentence abatements or forfeitures**. Exhibit 28, DoDI 1325.7-M, at ¶ AP1.1.14. (Emphasis Added). The MinRD marks the date on which the inmate will be released from confinement, subject to conditions of MSR. Exhibit 25, DoDI 1325.7, at ¶ 6.20. Thus, an inmate's abatements are applied toward the minimum release date for release on MSR. *See Huschak*, 642 F.Supp.2d at 1278 ("Petitioner received the benefit of his good conduct time by its positive impact upon petitioner's [minimum release date.]."

When Miller was placed on MSR, he was released from confinement (albeit with conditions) earlier than if he had not received credit for good conduct.").[18] Miller received the benefit of his abatements when his minimum release date was calculated as February 23, 2010 (instead of his Adjusted Maximum Release Date of October 21, 2014). Resp. Ex. 19. [19]

3. Liberty Interest

In order to state a cognizable claim for denial of due process under the Fifth or Fourteen Amendments, there must be a denial of protected liberty interest. Due process applies when "government action deprives a person of liberty or property." *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7 (1979). "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz.* at 7; *see also Sandin v. Conner*, 515 U.S. 472 (1995) (early release through parole does not constitute a protected liberty interest); *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988). In the event a liberty interest is created by statute, due process requires only a hearing and statement of reasons for denial of parole. *Greenholtz*, 442 U.S. at 7. Without a liberty interest, no process is due. *See Henderson v. Simms*, 223 F.3d 267, 274–5 (4th Cir. 2000).

Despite conclusory reference to his "liberty interest" in good conduct credits, Petition, p. 2, Miller fails to demonstrate that he has an Air Force-created liberty interest in an unsupervised release before completion of his sentence, nor does he point to an agency regulation that entitles

[18]   Miller was specifically notified in his Certificate of Release that waiver of credits is inapplicable to MSR.   Resp. Ex. 23, at p. 2 ¶ 3(n).  Miller appears to confuse MSR with release on traditional parole.  Traditional parole release requires the prisoner to waive all good conduct time up to the point of parole, but MSR does not.  This is because under traditional parole, the parolee is released prior to reaching the minimum release date.  MSR is available only upon reaching the minimum release date.

[19]  Respondent indicates that  USDB Reg. 600-1 incorrectly states that good conduct time and earned time accrued during confinement is forfeited or waived upon release on MSR. Resp. Ex. 29, at ¶ 6-1(e).   Waiver of such credits, however is not applicable to MSR, a fact that was clearly stated to Miller in the Certificate of Release, DD Form 2716-1. Resp. Ex. 23, at p. 2 ¶ 3(n).

him to the "unconditional" release he demands. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976) (convicted person has no constitutional or inherent right to be unconditionally released before the expiration of a valid sentence). There is no constitutional guarantee to earn good-time credits while in prison. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). While Miller clearly would have preferred a release from his sentence without conditions, he has no constitutional right to traditional parole or MSR or to dictate his conditions of release on MSR.

4. Policy Memorandum of September 17, 2004

In his opposition, Miller asserts that he was improperly subjected to the "new policy" of September 17, 2004 – the date a Defense Department official issued a policy memorandum. Respondent's position is that the MSR program was in effect several years before Miller committed his offenses or was court-martialed for his crimes in 2004. When MSR was introduced in 2001, it provided that all inmates in military prisons earned good conduct time with the possibility of supervised conditions at the date of minimum release. Respondent observes that Miller's reasoning taken to its logical conclusion would undermine the very purpose of the MSR, and notes the court in *Huschak* agreed. "There would be no point in MSR, if good conduct time required release from confinement without conditions before MSR was ordered." *See Huschak v. Gray*, 642 F. Supp. 2d 1268, 1279 (D. Kan. 2009). This court concurs.

To the extent Miller might intend to introduce an *ex post facto* argument, the *Ex Post Facto* Clause of the United States Constitution prohibits retroactive increases in punishment for a crime after its commission. *See* U.S. Const. art I, § 9; *Collins v. Youngblood*, 497 U.S. 37, 43–43 (1990). It assures that "legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Weaver v. Graham*, 450 U.S. 24, 28–9(1981). The fact that a change in parole law has occurred, does not establish an *ex post facto* violation. *See California*

*Department of Correction v. Morales*, 514 U.S. 499, 501–02 (1995). A retroactively applied parole regulation, guideline, or policy statement may violate the Ex Post Facto Clause if it creates "a significant risk" of "a longer period of incarceration than under the earlier rule." *Garner v. Jones* 529 U.S. 244, 255 (2000). For reasons already discussed, MSR does not result in a longer period of incarceration. Indeed, its practical effect is to reduce the amount of time spent in confinement. There is no merit to this claim.

For all these reasons, the court concludes that the military courts gave full and fair consideration to the factual record and the legal issues presented in Miller's § 2241 petition at Grounds One, Two, and Three. Issues of substantial constitutional dimension were considered by the military courts after review of evidence and legal analysis. The military courts gave adequate consideration to Miller's arguments and applied proper legal standards. After analyzing Miller's arguments in light of the record and the four factors, the court finds that the military courts accorded full and fair consideration to these claims. Moreover, if the court were to further consider Miller's claims, the court would find no basis to grant habeas relief. Consequently, the claims presented in Grounds One, Two and Three will be dismissed.

### D. GROUND FOUR – DUE PROCESS

Miller claims AFC& PB procedures for imposing MSR fail to meet basic standards of due process. Absent an identified liberty interest, however, there is no basis for his claim. S*ee supra*, pp. 23-24. In any event, the record shows that Miller was provided notice and opportunity to be heard in his consideration for MSR based on departmental regulations, [20] and the AFC&PB[21] acted

---

[20] *See supra*, pp. 4-5.

[21] When making MSR determinations, the AFC&PB considers the: 1) nature and circumstances of the offense and the impact of the offense on the victim; 2)inmate's confinement records, including custody level attained and participation in rehabilitation programs; 3) inmate's personal characteristics; 4) protection and welfare of society; 5) the need for

reasonably by placing him in the MSR parole program, and in assigning him general and specific conditions to assist with his safe transition to civilian life, in light of his serious and violent sexual offenses against multiple victims. [22]  There is simply no evidence that the AFC&PB used unauthorized factors to determine his MSR placement.

Although Miller waived his right to be heard prior to the meeting of the AFC&PB, he later sought reconsideration before the AFC& PB which considered and addressed his concerns.  One of the conditions of his release, payment for potential costs for sexual offender treatment, was modified in response. Miller has been afforded the opportunity to be heard, sometimes with success.[23]

Lastly, although the military courts have not considered this question, it has been rejected by the court in *Huschak* which explained that, "prior to the imposition of MSR," inmates are not owed the same due process rights they would receive if their parole were revoked. *Huschak*, 642 F. Supp. 2d at 1280.  Unlike a parole or loss of good time credit, " where a person loses his 'liberty,' with the conditions of MSR, " a person may gain liberty, albeit with conditions." *See id; see also Moultrie*, 2010 WL 2720586 at *6 (upholding the Army's MSR program where due process claims raised). For these reasons, the court finds no grounds to award habeas relief based on this claim.

### E.  GROUND FIVE- MSR CONDITIONS

---

good order and discipline; 6) inmate's combat and/or overseas records; 7) inmate's insight into the wrongfulness of the offense and demonstrated sense of responsibility; and 8) inmate's efforts to make restitution to the victim.  Resp. Ex. 30.

[22]  Respondents note that Grounds Four and Five challenge the administrative consequences of the MSR program; however, MSR does not involve the alteration of the adjudged sentence. Consequently, the military courts lack jurisdiction to entertain Miller's claims challenging the program's administration. The jurisdiction of the military courts is strictly circumscribed to act only with respect to the findings and sentence as approved by the convening authority and as affirmed or set aside as incorrect in law by the Court of Criminal Appeals. *See  Clinton v. Goldsmith*, 526 U.S. 529,531, 534, 536 (1999) (citing Article 67(c), UCMJ, 10 U.S.C. ' 867(c)).  On direct appeal, the scope of military court review does not extend to supervision of all aspects of the confinement and release process. *United States v. Towns*, 52 M.J. 830, 833 (A.F. Ct. Crim. App. 2000), aff'd, 55 M.J. 361 (C.A.A.F. 2001).

[23] Additional process is available before the AFC&PB in the form of clemency consideration. Resp. Ex. 30.

Miller's last claim is that the AFC&PB abused its discretion by imposing unreasonable conditions on his post-release supervision and these conditions are unrelated to the circumstances of his conviction, unconstitutionally vague, or result in a greater deprivation of his liberty than necessary to achieve their objectives.

Respondent's position is that the conditions imposed on Miller are consistent with DoD regulations authorizing the imposition of any reasonable supervision conditions to promote successful transition into civilian life and protect the community and factors to be considered by the AFC& CB. *See supra*, n. 21. This court agrees. It was reasonable to require an individual convicted of kidnapping women and sexual assault to attend sex offender treatment and to refrain from possessing pornography, alcohol, or illegal substances which can lower inhibitions. A condition of periodic examination of Miller's electronic equipment by his probation officer was reasonable in light of Miller's surreptitious videotaping of sex acts without the consent of his partner. *See id.* The AFC& CB acted with a rationale basis after considering Miller's confinement records and previous offer to participate in community-based treatment when it imposed a condition of treatment. The AFC&PB took into account Miller's "insight into the wrongfulness of the offense and demonstrated sense of responsibility," by evaluating his admissions of criminal conduct, recognizing his failure to take responsibility for his offenses, and lack of effort to make restitution to his victims. *See id.* It bears noting that the AFC&PB considered and addressed Miller's objections to the conditions, and made modifications as it deemed reasonable. Clearly, the conditions imposed were rationally related to the factors for MSR consideration. Miller has been afforded opportunity to be heard and may continue to petition for further consideration before the AFC&PB. He presents no grounds for habeas relief and the claim will be denied.

**IV.   CONCLUSION**

For these reasons, the court finds that there are no genuine dispute as to any material fact and respondent is entitled to judgment as a matter of law. The court will deny a certificate of appealability because Miller has not made a substantial showing of the denial of a constitutional right. A separate order follows.


__September 20, 2011                              /s/_____
Date                                              J. Frederick Motz
                                                  United States District Judge